MAY 26 2026 PM 12:10
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

YULIYA GLAZMAN,

    *Plaintiff,*

       v.                      Case No. 8:26-cv-01522-CEH-AEP

CITIGROUP, INC., and
CITIBANK, N.A.,

    *Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO

## DISMISS FIRST AMENDED COMPLAINT AND COMPEL ARBITRATION

### ISSUES TO BE DECIDED

Citi's motion asks whether Plaintiff entered a broad employment arbitration policy. That is not the first question. The motion cannot support the requested relief unless Citi first survives antecedent statutory, contractual, equitable, and remedial thresholds. The issues are:

1. Whether this case relates to a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4);

2. Whether Plaintiff's election under 9 U.S.C. § 402(a) renders any predispute arbitration agreement unenforceable with respect to this case;

3. Whether the arbitration policy, by its own terms, excludes disputes that federal statute makes non-arbitrable;

4. Whether Citi's post-filing conduct — including the April 7, 2026 separation agreement requiring a no-proceedings representation, the April 23, 2026 internal-recruitment sequence followed by silence through Plaintiff's separation date, and the May 11, 2026 revised separation agreement conditioning payment on dismissal of this action with prejudice — independently defeats enforcement or precludes enforcement on the present record; and

5. If the Court reaches relief, whether dismissal is unavailable under 9 U.S.C. § 3 because Citi requested a stay in the alternative.

**INTRODUCTION**

Plaintiff opposes Defendants' Motion to Dismiss First Amended Complaint and Compel Arbitration. The Motion was filed May 5, 2026 (Dkt. 29) and is directed at the First Amended Complaint filed April 23, 2026 (Dkt. 22). The Motion seeks dismissal of the action and an order compelling arbitration of all ten counts.

2

The Motion presents the arbitration question as if it were the threshold inquiry. The threshold inquiry is whether 9 U.S.C. §§ 401–402 render the arbitration agreement unenforceable with respect to this case. The FAC at paragraph 5 and paragraph 81 expressly invokes the EFAA election.

The Motion fails at five antecedent thresholds identified in the Issues to Be Decided section. Issues 1 and 2 defeat enforcement under the EFAA. Issue 3 confirms that result under the Policy's own federal-statutory exclusion. Issue 4 independently defeats enforcement or precludes enforcement on the present record. Issue 5 forecloses dismissal if the Court reaches the question of relief.

## FACTUAL BACKGROUND

### A. The FAC and Plaintiff's EFAA Election.

Plaintiff filed the First Amended Complaint on April 23, 2026. Dkt. 22. The FAC asserts ten counts. Count I is titled "Hostile Work Environment Based on Sex." The FAC at paragraph 5 elects to void any predispute arbitration agreement under 9 U.S.C. § 402(a). FAC ¶ 5. The FAC at paragraph 81 alleges that the conduct alleged in Count I constitutes sexual harassment in the form of a hostile work environment because of sex within the meaning of 42 U.S.C. § 2000e-2(a)(1), and that such hostile work environment is not limited to conduct of a sexual or sexually explicit character but

3

encompasses sex-differentiated working conditions to which an employee is subjected because of sex. FAC ¶ 81.

### B. *The Count I Pattern Allegations.*

Plaintiff was the sole female member of a five-person team during the relevant period. FAC ¶ 78. The FAC alleges repeated, unwelcome corrective assignments tied to the deficient work product of a male colleague in the same classification. FAC ¶ 80. A designated backup employee had been assigned to the male colleague and remained in place throughout the relevant period. FAC ¶ 81. Other male colleagues on the team performed their assigned work without comparable corrective burden. FAC ¶¶ 80, 84. The corrective assignments displaced Plaintiff's core work and created deadline pressure. FAC ¶ 82.

The conduct constituted a continuous pattern of sex-differentiated working conditions from at least September 2024 through March 4, 2026. FAC ¶ 79. Within that pattern, the corrective work was performed on at least three documented occasions within a nine-month period: January 29, 2025; March 14, 2025; and September 30, 2025. FAC ¶ 81. The FAC alleges that the conduct was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and to create a working environment

4

that unreasonably interfered with Plaintiff's ability to perform her core responsibilities. FAC ¶ 91.

### C. *The Motion and the Arbitration Policy.*

Defendants filed the Motion on May 5, 2026. Dkt. 29. The Motion attaches the Declaration of Sandrina Wilson (the "Wilson Declaration") and exhibits, including the Employment Arbitration Policy as Exhibit A. The Motion proceeds under 9 U.S.C. §§ 3–4 and Federal Rule of Civil Procedure 12(b)(1). The Motion requests dismissal of the action as primary relief and a stay in the alternative.

The Arbitration Policy, by its own terms, excludes disputes that federal statute makes non-arbitrable. The Policy provides:

> "Disputes which are expressly precluded from arbitration by federal statute also are not covered by this policy."

Wilson Decl., Ex. A (Employment Arbitration Policy), Scope of Policy section.

### D. *The Post-Filing Sequence.*

On March 16, 2026, Plaintiff filed the original Complaint. Dkt. 1.

On April 7, 2026, Citi tendered to Plaintiff a separation agreement requiring Plaintiff to represent that Plaintiff had not filed, directly or indirectly, nor caused to be filed, any legal proceeding against Citi in any state or federal court or in arbitration,

or any administrative proceeding with any local or state agency. Pl. Decl. ¶¶ 3, 5, 7 & Ex. A ¶ 7(b). The federal action and the EEOC charge were already pending on that date. The required representation applied to all proceedings against Citi as of the date of signing, including the federal action and the EEOC charge then pending. Pl. Decl. ¶ 7.

On April 8, 2026, Defendants appeared through counsel and filed the first motion to dismiss and compel arbitration. Dkt. 10.

On April 23, 2026, Plaintiff was interviewed for an internal position with Citi. Pl. Decl. ¶ 12. Plaintiff was advised that follow-up would occur within approximately one week. Id. Plaintiff filed the FAC the same date. Dkt. 22.

From April 23, 2026 through May 7, 2026, Plaintiff's status with respect to the internal position remained without further communication from Citi. Pl. Decl. ¶ 12.

On May 5, 2026, Citi filed the Motion. Dkt. 29. On May 7, 2026, Plaintiff's termination took effect, as Citi's motion represents. Dkt. 29, Factual Background ¶ 2.

On May 11, 2026, Citi tendered to Plaintiff a revised separation agreement. Pl. Decl. ¶¶ 4, 6 & Ex. B. The revised agreement (i) names this action by case number in the release at ¶ 5(a); (ii) at ¶ 7(a)(i), carves the case out of the wages-paid representation by reference to the action; (iii) at ¶ 7(b), requires Plaintiff to acknowledge that the

6

action will be dismissed with prejudice; and (iv) at ¶ 17(a)(ii), conditions payment on receipt of an Order from the Court reflecting that the action has been dismissed with prejudice. Pl. Decl. ¶¶ 8–11 & Ex. B.

## ARGUMENT

### I. THIS CASE RELATES TO A SEXUAL HARASSMENT DISPUTE WITHIN THE MEANING OF 9 U.S.C. § 401(4).

#### A. *The Statutory Text Defines the Gateway.*

Section 401(4) defines the operative term:

> "[T]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

Three propositions follow from the text. First, the statutory unit is the dispute, not the claim. Second, the standard is conduct alleged to constitute sexual harassment under applicable law, not conduct proven to satisfy a particular Title VII merits standard. Third, the connection is "relating to," which is a connection standard rather than an identity standard.

#### B. *The Plausibility Screen Applies to the Statutory Question.*

Courts may conduct a plausibility screen at the EFAA gateway.[1] See *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) (reading § 401(4)'s "alleged" language to incorporate the plausibility standard); accord *Bruce v. Adams & Reese, LLP*, 2026 WL 523180 (6th Cir. Feb. 25, 2026).[2]  The screen tests whether the complaint plausibly alleges a sexual harassment dispute under applicable law. The screen tests the pleading's allegations of conduct constituting sexual harassment under applicable federal law, including non-sexually-explicit theories within Title VII.

### C. *Applicable Federal Law Includes Reeves v. C.H. Robinson.*

Under Title VII, harassing conduct constitutes discrimination because of sex when members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed; motivation by sexual desire is not required. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998).

---

[1] The Motion is captioned under Rule 12(b)(1). An arbitration agreement is a contractual defense to forum, not a defect in subject matter jurisdiction under 28 U.S.C. § 1331. The operative standard is the summary-judgment-like standard under *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016), which Defendants have adopted by attaching the Wilson Declaration to the Motion. Plaintiff's exhibits and supporting declaration are properly before the Court under that standard.

[2] An alternative reading applies the standard articulated in *Bell v. Hood*, 327 U.S. 678 (1946), requiring only a real and nonfrivolous basis to believe the conduct violates applicable sexual harassment law. *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 542 (S.D.N.Y. 2024). The FAC satisfies either standard.

Title VII hostile work environment based on sex is "applicable Federal law" within § 401(4).[3] *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010) (en banc), holds that Title VII hostile work environment based on sex reaches conduct beyond sexually explicit acts. The theory reaches sex-differentiated working conditions to which an employee is subjected because of sex. The FAC at paragraph 81 expressly invokes this theory. FAC ¶ 81.

The Eleventh Circuit has continued to apply *Reeves* to hostile work environment claims based on sex. See *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016); *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179 (11th Cir. 2016); *Beckford v. Dep't of Corrections*, 605 F.3d 951 (11th Cir. 2010). State appellate authority has applied the same principle in the EFAA context. *Hansbrough v. Marshall Dennehey, P.C.*, 2026-Ohio-657 (Ohio Ct. App. Feb. 26, 2026), held that hostile work environment sexual harassment under applicable law does not require conduct of an explicitly sexual character and may consist of conduct directed at the plaintiff because of sex.

---

[3] Defendants cite the District of New Jersey's decision in *Cornelius v. CVS Pharmacy, Inc.*, 2023 WL 6876925 (D.N.J. Oct. 18, 2023). Mot. at 11. The Third Circuit affirmed on different grounds. *Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 246 (3d Cir. 2025) ("We agree with the District Court that the EFAA does not cover Cornelius's claims, but we reach that conclusion on different grounds."). The Third Circuit decided the case on the EFAA's timing component and addressed neither the District Court's definition of "sexual harassment dispute" nor the scope of Title VII hostile work environment doctrine.

### D. *The FAC Plausibly Alleges a Sex-Based Hostile Work Environment Under Reeves.*

The FAC alleges that Plaintiff was the sole female member of a five-person team during the relevant period. FAC ¶ 78. The FAC alleges a continuous pattern of sex-differentiated working conditions from at least September 2024 through March 4, 2026. FAC ¶ 79. The FAC alleges repeated, unwelcome corrective assignments tied to the deficient work product of a male colleague in the same classification. FAC ¶ 80. The FAC alleges that this corrective work was performed on at least three documented occasions within a nine-month period — January 29, 2025; March 14, 2025; and September 30, 2025 — notwithstanding that a designated backup employee had been assigned to the male colleague and remained in place throughout the relevant period. FAC ¶ 81.

The FAC alleges that each engagement required Plaintiff to reconcile data from multiple source systems, identify and draft written corrections to senior leaders, and displace time from the performance of her own core responsibilities, causing stress on Plaintiff's deliverable deadlines. FAC ¶ 82. The FAC alleges that no other male colleague on the five-person team — including the designated backup employee — was directed to provide comparable uncompensated corrective coverage during the same period. FAC ¶¶ 80, 84.

10

Taken together and read in the light most favorable to Plaintiff, the allegations plausibly state a sex-based hostile work environment under *Reeves*. The severity-or-pervasiveness component is satisfied for pleading purposes by the FAC's express allegation that the conduct was "sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and to create a working environment that unreasonably interfered with Plaintiff's ability to perform her core responsibilities." FAC ¶ 91. The pleaded pattern — the three documented corrective occasions within a nine-month subset, displacement of Plaintiff's core work, deadline pressure, uncompensated corrective burden, and unequal assignment structure — supplies the factual bridge between the pleaded conduct and the pervasiveness allegation.

*Reeves* operates here to defeat the premise that conduct outside the sexual-advances or sexually-explicit-comment category falls outside the scope of sexual harassment within § 401(4). The severity-or-pervasiveness component remains an element of the analysis and is satisfied for pleading purposes through the FAC's express pervasiveness allegation.

Defendants' hostile-work-environment authorities address merits-stage evidentiary sufficiency or non-EFAA pleading contexts; they do not displace the EFAA gateway inquiry under § 401(4) and *Reeves*.

### *E. The Case Therefore Relates to a Sexual Harassment Dispute.*

Because Count I plausibly alleges conduct that constitutes sexual harassment under applicable federal law as informed by *Reeves*, the case "relates to" a sexual harassment dispute within § 401(4). The threshold question under § 401(4) is answered in Plaintiff's favor.

## II. SECTION 402(a) RENDERS THE ARBITRATION AGREEMENT UNENFORCEABLE WITH RESPECT TO THIS CASE.

### *A. The Statutory Text Operates at the Case Level.*

Section 402(a) provides:

> "[N]otwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).

The statutory operative unit is "a case." The language "with respect to a case" controls the scope of unenforceability.

12

### B. Authority Confirms Case-Level Operation.

The Sixth Circuit holds that § 402(a) renders a predispute arbitration agreement unenforceable as to the entire case once a plaintiff plausibly alleges a sexual harassment dispute. *Bruce v. Adams & Reese, LLP*, 2026 WL 523180 (6th Cir. Feb. 25, 2026). *Rix* reached the same conclusion and collected the principal supporting decisions. *Rix v. Polsinelli PC*, 2025 WL 2674767, at *14 (D.D.C. Sept. 18, 2025) (citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535 (S.D.N.Y. 2023); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173 (S.D.N.Y. 2023); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917 (N.D. Cal. 2023); and additional decisions). *Rix* also holds that each claim arising from the same conduct independently "relates to" the sexual harassment dispute under § 402(a).

The Ohio Court of Appeals reached the same conclusion in *Hansbrough v. Marshall Dennehey, P.C.*, 2026-Ohio-657 (Ohio Ct. App. Feb. 26, 2026), holding that where the EFAA renders an arbitration agreement unenforceable, the bar to arbitration applies to the entire case rather than to the sexual harassment claims alone.

### C. The Four-Step Chain.

The chain operates in sequence: the FAC plausibly alleges a sexual harassment dispute; Plaintiff elected under § 402(a); the case relates to that dispute; § 402(a) renders any predispute arbitration agreement unenforceable with respect to the case.

### D. *Claim-by-Claim Severance Is Foreclosed by § 402(a)'s Case-Level Operation.*

Section 402(a)'s case-level operation forecloses the Motion's severance approach. Once the case "relates to" a sexual harassment dispute, the entire case is non-arbitrable, and no predispute arbitration agreement is enforceable with respect to any claim in the case. The analysis applies uniformly to all ten counts of the FAC. The argument structure treats the case as a single unit under § 402(a). The Second Circuit has held that a claim of retaliation for reporting sexual harassment "relate[s] to conduct that is alleged to constitute sexual harassment" within § 401(4). *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 92 (2d Cir. 2024). The leading authority for claim-by-claim severance under § 402(a) was overturned in relevant part. *Mera v. SA Hospitality Grp., LLC*, 2025 WL 3202080, at *10 (S.D.N.Y. Nov. 17, 2025).

### III. THE ARBITRATION POLICY EXCLUDES FEDERALLY NON-ARBITRABLE DISPUTES BY ITS OWN TERMS.

#### A. *The Policy's Federal-Statutory Exclusion.*

The Arbitration Policy excludes federally non-arbitrable disputes:

"Disputes which are expressly precluded from arbitration by federal statute also are not covered by this policy."

Wilson Decl., Ex. A (Employment Arbitration Policy), Scope of Policy section.

The immediately following provision provides:

"If you elect to pursue in court claims that are excluded from this Policy, including claims regarding disputes which are expressly precluded from arbitration by federal statute, Citi may at its option sever any such claims that you file in court from any other claims that you bring against Citi."

Wilson Decl., Ex. A (Employment Arbitration Policy), Scope of Policy section.

The second provision confirms that the Policy itself contemplates plaintiff election as the operative mechanism for in-court pursuit of federally non-arbitrable claims.

## B. Formation and Scope Are Assumed for Purposes of This Issue.

For purposes of Issue 3, the Court may assume that the Policy was formed and that its scope extends to employment disputes. The federal-statutory exclusion operates within the Policy's own terms.

## C. The Motion Asks for Enforcement Beyond the Policy's Scope.

Once 9 U.S.C. § 402 applies, the Motion is asking the Court to enforce the Policy beyond its own exclusion provision. The contractual basis for the Motion fails on the

15

Policy's own terms. Issue 3 reinforces Issues 1 and 2: the same case that is non-arbitrable by federal statute is also excluded from arbitration by the Policy itself.

## IV. CITI'S POST-FILING CONDUCT PRECLUDES ENFORCEMENT ON THE PRESENT RECORD.

### A. *The Motion Does Not Address Later Operative Facts Bearing on Enforcement.*

The Motion was filed May 5, 2026. Dkt. 29. The Motion does not address later operative facts that bear on enforcement. The May 11, 2026 revised separation agreement post-dates the Motion and is part of the record presented with this opposition. Pl. Decl. ¶¶ 4, 6 & Ex. B.

### B. *The Post-Filing Sequence.*

On April 7, 2026, Citi tendered the first separation agreement. Pl. Decl. ¶¶ 3, 5. Paragraph 7(b) of that agreement provides:

> "Subject to Paragraphs 5(g) and 14 of this Agreement, you represent and warrant that you have not filed, directly or indirectly, nor caused to be filed, any legal proceeding against Citi or the Releasees in any state or federal court or in arbitration, or any administrative proceeding with any local or state agency having jurisdiction over claims of employment discrimination, claims for past or future wages, salary, bonuses, stock, stock options or other forms of compensation or benefits, claims arising

16

under CAP, DCAP, or any other issues concerning your employment, the terms and conditions of your employment, and/or the separation of your employment from Citi."

Pl. Decl. ¶ 7 & Ex. A ¶ 7(b). The federal action and the EEOC charge were already pending on the date of tender. Pl. Decl. ¶ 7.

On April 23, 2026, Plaintiff was interviewed for an internal position. Pl. Decl. ¶ 12. From April 23 through May 7, 2026, Plaintiff's status remained without further communication from Citi. Id.

On May 5, 2026, Citi filed the Motion. Dkt. 29. On May 7, 2026, Plaintiff's termination took effect. Dkt. 29, Factual Background ¶ 2.

On May 11, 2026, Citi tendered the revised separation agreement, which is set forth in Factual Background D. The operative terms incorporated by reference are (i) ¶ 5(a)'s release naming this action by case number; (ii) ¶ 7(a)(i)'s wage-release acknowledgment identifying this action by case number; (iii) ¶ 7(b)'s no-proceedings representation, which carves out this action only by requiring Plaintiff to acknowledge that she will dismiss it with prejudice; and (iv) ¶ 17(a)(ii)'s condition that payment occurs only upon receipt of a court Order dismissing this action with prejudice. Pl. Decl. ¶¶ 8–11 & Ex. B.

17

The sequence is treated as a single course of conduct.

### C. *The Conduct Is Inconsistent with the Asserted Right to Arbitrate.*

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), eliminated any arbitration-specific prejudice requirement and focused the inquiry on whether the party asserting the arbitration right has acted inconsistently with that right.

Citi invokes this Court's adjudicatory authority to obtain arbitration and dismissal while the May 11 agreement conditions payment on a court-entered Order dismissing this same action with prejudice. Paragraph 17(a)(ii) of the May 11 agreement requires "receipt of an Order from the Court" reflecting dismissal with prejudice of the named federal action as a precondition to payment. Pl. Decl. ¶ 11 & Ex. B ¶ 17(a)(ii). That position is incompatible with Citi's simultaneous position that the Court should send the action out of court to arbitration.

The sequence — April 7 no-proceedings-representation condition, April 23 internal-recruitment-followed-by-silence sequence, and May 11 court-entered-dismissal-with-prejudice payment condition — is a continuous course of conduct. The cumulative course of conduct is inconsistent with the asserted right to arbitrate.

### D. *Rule 408 Permits Use of the Agreements for the Sundance Inquiry.*

18

The agreements are offered solely to establish the operative terms bearing on enforcement of the arbitration right under *Morgan v. Sundance*. The agreements are offered for that purpose and that purpose only. Federal Rule of Evidence 408(b) permits compromise conduct to be offered for purposes other than to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(b).

The April 7 and May 11 agreements were employment-separation instruments governing separation pay, release, representations, payment timing, and enforcement. The operative terms — the no-proceedings representation in the April 7 agreement, and the case-named release, dismissal-with-prejudice acknowledgment, and court-order payment condition in the May 11 agreement — are operative facts in the arbitration-enforcement inquiry.

### E. The Record Contains Citi's Own Representation of the Termination Date.

Citi's motion represents that Plaintiff's position was eliminated effective May 7, 2026, two days after the Motion was filed. Dkt. 29, Factual Background ¶ 2. The representation is part of the record. The temporal proximity between the Motion, the termination date, and the May 11 revised agreement supports the conclusion in Section C of this Issue.

## V.  IF THE COURT REACHES RELIEF, DISMISSAL IS UNAVAILABLE UNDER 9 U.S.C. § 3.

19

In *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Supreme Court held that when a district court finds that a dispute is subject to arbitration and a party requests a stay, 9 U.S.C. § 3 requires a stay rather than dismissal.

Defendants' dismissal authority — *Green v. CVS Health* and *Bender v. A.G. Edwards & Sons, Inc.* — predates *Spizzirri* and reflects a discretion to dismiss that *Spizzirri* removed.

The Motion at the Conclusion section requests dismissal as primary relief and, alternatively, a stay. Dkt. 29 at 19. Citi has therefore requested a stay within the meaning of Spizzirri.

If the Court were to reach the question of relief, dismissal is unavailable as a matter of law. Issue 5 forecloses dismissal as a matter of statutory text. The result of Issue 5, standing alone, is foreclosure of dismissal; the foreclosure of an order compelling arbitration depends on Issues 1, 2, 3, and 4.

## CONCLUSION

Plaintiff requests that the Court deny the Motion. Issues 1 and 2 defeat enforcement under the EFAA. Issue 3 confirms that result under the Policy's own federal-statutory exclusion. Issue 4 independently defeats enforcement or precludes enforcement on the present record. Issue 5 forecloses dismissal if the Court reaches relief.

Dated: May 26, 2026.

Yuliya Glazman

Plaintiff, pro se
2110 Thousand Trails Road
Clermont, FL 34714
Telephone: (407) 794-6503

21

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 26, 2026, the foregoing was delivered to the Clerk of Court for filing. The Court's CM/ECF system will provide notice of electronic filing to all counsel of record upon docketing.

Yuliya Glazman

22