# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

YULIYA GLAZMAN,

    *Plaintiff,*

    v.                          Case No. 8:26-cv-01522-TPB-AEP

CITIGROUP, INC., and
CITIBANK, N.A.,

    *Defendants.*

## PLAINTIFF'S MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 54(b) FOR RECONSIDERATION AND AMENDMENT OF THE AUGUST 5, 2026 ORDER

### I.    RELIEF REQUESTED

1.    Plaintiff moves under Federal Rule of Civil Procedure 54(b) for reconsideration of the Order entered August 5, 2026 (Doc. 54), which compelled arbitration. The Order resolved the motion through an analysis that tested a claim formulation different from Count I, separated the pleaded facts from the allegation they support, and carried the same claim-sufficiency analysis into an alternative standard that reserves sufficiency for merits adjudication. The Order described Plaintiff's opposition as resting on one ground, although the

opposition presented five antecedent grounds, including an objection based on Defendants' post-filing conduct identified as independent of the EFAA argument. The Order did not adjudicate that ground.

2.    Plaintiff requests that the Court reconsider the determination that the arbitration agreement is enforceable, vacate paragraphs 2, 4, and 5 of the decretal portion of the Order, deny the motion to compel, and reopen the action. In the alternative, if the Court adheres to the result, Plaintiff requests that the Court amend the Order to adjudicate separately the nonfrivolousness standard, the Policy's federal-statutory exclusion, and Defendants' post-filing conduct.

## II.    RULE 54(b) STANDARD

3.    The Order is interlocutory. It stays the action and directs administrative closure rather than entering final judgment. Doc. 54 at 8–9. Rule 54(b) governs revision of an interlocutory order. A district court retains the authority to revise an interlocutory order at any time before the entry of final judgment. Fed. R. Civ. P. 54(b); *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367 (11th Cir. 2024). Reconsideration remains within the Court's discretion.

4.    Plaintiff does not contend that Rule 54(b) permits repetitive briefing because a party disagrees with a ruling. Reconsideration is warranted because

2

the Order's stated analysis does not correspond to material portions of the claim and the opposition presented, and because the Order compelled arbitration without adjudicating an independently asserted ground against enforcement. The standards governing motions under Rule 59(e) do not apply; the motion concerns an interlocutory order under Rule 54(b).

### III.   THE ORDER DID NOT RESOLVE THE OPPOSITION AS PRESENTED

5.     The opposition presented five antecedent issues under the heading "Issues to Be Decided": whether the case relates to a sexual harassment dispute within 9 U.S.C. § 401(4); whether Plaintiff's election under 9 U.S.C. § 402(a) renders any predispute arbitration agreement unenforceable with respect to the case; whether the arbitration policy, by its own terms, excludes disputes that federal statute makes non-arbitrable; whether Defendants' post-filing conduct independently defeats or precludes enforcement on the present record; and whether dismissal is unavailable under 9 U.S.C. § 3. Doc. 39 at 1.

6.     The Order describes the opposition differently. It states: "Instead, Plaintiff opposes submitting this dispute to arbitration on the ground that the [EFAA] precludes the arbitration of her claims." Doc. 54 at 5. That description states one ground. The opposition presented five. The third ground rested on

the Policy's own terms, and the fourth rested on post-filing conduct identified as independent of the EFAA argument. Doc. 39 at 1, 9–12.

7.    The Order's ultimate determination states that "the arbitration agreement in this case is enforceable." Doc. 54 at 8. The reasons stated in support of that determination address the EFAA applicability question. They do not address the fourth ground. The Order compelled arbitration without stating the disposition of an independently asserted ground against enforcement.

## IV.    THE ORDER TESTED A CLAIM FORMULATION DIFFERENT FROM COUNT I

8.    Three formulations are at issue. The claim pleaded is a hostile work environment based on sex under Title VII. The formulation the Order tested is a "sexual harassment claim," evaluated against quid pro quo demands and sexually explicit conduct. The statutory category is a dispute relating to conduct alleged to constitute sexual harassment under applicable law. 9 U.S.C. § 401(4). The three formulations overlap but are not interchangeable. The Order used the second to determine whether the first falls within the third.

9.    The Order's analysis proceeds through the sexually explicit formulation. It identifies two kinds of sexual harassment claims, describes quid pro quo harassment as the extraction of sexual favors, and describes the hostile

4

work environment category by reference to "sexual threats or conduct." Doc. 54 at 6. It then concludes that discrimination "in compensation or assignments" does not create a hostile work environment. Doc. 54 at 6.

10.    The statement that "[a] hostile work environment is not created by such matters as discrimination in compensation or assignments" carries no citation. Doc. 54 at 6. The issue presented by Count I is not whether a compensation or assignment decision, standing alone, establishes a hostile work environment. It is whether the recurring pattern pleaded in Count I was assessed cumulatively under the governing hostile-work-environment framework before being classified as outside that category.

11.    Count I did not plead quid pro quo harassment. It did not plead sexually explicit conduct. It pleaded recurring sex-differentiated working conditions, and it alleged that a hostile work environment because of sex is not limited to conduct of a sexual or sexually explicit character. Doc. 22 ¶ 81.

12.    Applicable Title VII law does not permit allegations to be excluded from hostile-work-environment analysis solely because the conduct was not sexually explicit. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), holds that motivation by sexual desire is not required and directs the inquiry to

5

whether the plaintiff was subjected to disadvantageous terms or conditions of employment because of sex. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807–10 (11th Cir. 2010) (en banc), requires workplace conduct to be viewed cumulatively and in its social context. The Order did not apply that framework before placing the allegations outside the hostile-work-environment category. Reconsideration does not require a determination that Count I satisfies any standard; it requires application of the governing framework before the allegations are categorically classified.

## V.    THE ORDER SEPARATED THE ULTIMATE ALLEGATION FROM THE FACTS SUPPORTING IT

13.    The Order identifies the allegation that the conduct was "sufficiently pervasive to alter the terms and conditions of Plaintiff's employment," labels it conclusory, and states that "nowhere" in the complaint are there allegations plausibly suggesting a sexual harassment claim. Doc. 54 at 7. In the same passage, the Order acknowledges the pleaded facts: three documented occasions within a nine-month period, displacement of Plaintiff's work, deadline pressure, and unequal assignment structure. Doc. 54 at 7.

14.    The First Amended Complaint pleads the pattern. Plaintiff was the sole female member of a five-person team. Doc. 22 ¶ 73. A male colleague had a

6

designated backup who remained in place. Doc. 22 ¶¶ 75–76. Plaintiff was repeatedly directed to perform corrective work on that colleague's deficient product on at least three documented occasions within a nine-month period. Doc. 22 ¶ 76. The assignments required reconciliation across multiple source systems and written corrections to senior leaders, displaced Plaintiff's core work, and created deadline pressure. Doc. 22 ¶¶ 76–77. No other male colleague, including the designated backup, was directed to provide corrective coverage for any team member's work product. Doc. 22 ¶ 75. The corrective work was unwelcome, was performed under direction rather than by choice, and carried no additional compensation. Doc. 22 ¶ 77. The pattern ran from January 2025 through September 2025. Doc. 22 ¶ 74. Count I then states its own structure. The concurrent sex-differentiated treatment alleged in Counts III and IV is referenced solely to support the inference that the corrective-assignment pattern was based on Plaintiff's sex, and is not re-pleaded as hostile-environment conduct. Doc. 22 ¶ 79. The Order's classification — "at most discriminatory unequal pay and assignments" — restates the material Count I offers as inference support as if it were the claim itself.

15. The allegation that the conduct was "sufficiently pervasive" states an ultimate conclusion. It does not become established by its presence in the pleading. The question is whether the factual allegations supporting it were assessed in the totality of the circumstances before the Order concluded that they showed "at most discriminatory unequal pay and assignments." Doc. 54 at 7. The Order states the classification. It does not state a cumulative assessment of the pleaded facts.

16. The issue is insufficiency, not absence. The facts were pleaded and were acknowledged in the Order. The disputed question is the legal significance those facts carry when considered together. The pervasiveness allegation also pleads that the working environment unreasonably interfered with Plaintiff's ability to perform her core responsibilities. Doc. 22 ¶ 80. Interference with work performance is a factor the totality inquiry considers under the authority the Order quotes.

## VI. FOOTNOTE 3 DID NOT APPLY THE STANDARD IT IDENTIFIED

17. The Order's analysis proceeded in two steps. It classified the conduct as unequal pay and assignments rather than hostile work environment

harassment. It then held the claim insufficient under Rule 12(b)(6). Doc. 54 at 6–7.

18. Footnote 3 identifies the competing standard, under which "a plaintiff need only plead nonfrivolous claims relating to … conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication." Doc. 54 at 7 n.3 (quoting *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024)). Footnote 3 states that Plaintiff would lose under that standard "for the same reasons discussed herein." Doc. 54 at 7 n.3.

19. Footnote 3 adds one more statement: "Plaintiff's conclusory allegations labeling her claims as 'harassment' would be insufficient to defeat arbitration pursuant to the EFAA." Doc. 54 at 7 n.3. The premise fails on the record. The First Amended Complaint does not attach that label. The word appears in two paragraphs, and in both the statute supplies it. Paragraph 5 makes the election under 9 U.S.C. § 402(a) and tracks the definition of "sexual harassment dispute" in 9 U.S.C. § 401(4). Doc. 22 ¶ 5. Paragraph 81 alleges that the conduct alleged in Count I constitutes sexual harassment in the form of a hostile work environment because of sex within the meaning of 42 U.S.C. §

9

2000e-2(a)(1) and presents a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4). Doc. 22 ¶ 81. Count I carries a different caption: "Hostile Work Environment Based on Sex." The statute supplied the word; Plaintiff did not. Section 401(4) requires a plaintiff to allege conduct constituting sexual harassment in order to make the election. The label the footnote attributes to Plaintiff is the term Congress made the condition of the election. An analysis that converts the statutory term into a pleading conclusion, and then finds the conclusion insufficient, is not an application of the standard footnote 3 identifies.

20.    Footnote 3 imported the classification and the claim-sufficiency analysis used to resolve the Rule 12(b)(6) question. The standard it identifies reserves the sufficiency of the claim for merits adjudication. A gateway determination that rests on claim sufficiency is not an application of a standard that reserves sufficiency for later. The footnote applied the analysis it was required to set aside.

21.    Plaintiff requests that the Court either reconsider the EFAA determination under a separate nonfrivolousness inquiry, or amend the Order to identify the reasoning by which the allegations are frivolous independent of the Rule 12(b)(6) sufficiency determination.

## VII. THE ORDER DID NOT DECIDE THE POLICY'S FEDERAL-STATUTORY EXCLUSION

22.     The opposition presented an argument grounded in the Policy's own terms. The Policy provides: "Disputes which are expressly precluded from arbitration by federal statute also are not covered by this policy." Doc. 39 at 9 (quoting Wilson Decl., Ex. A). The opposition did not contend that all federal employment disputes are excluded. It contended that, if the EFAA applies, the Policy itself excludes the dispute from its scope. Doc. 39 at 9–10.

23.     The Order describes the argument differently. It states that Plaintiff "does not argue, and cannot argue, that the arbitration agreement expressly excludes disputes arising under federal employment law," and then quotes the Policy's inclusion of Title VII, the ADEA, the FLSA, and the Equal Pay Act. Doc. 54 at 4. That is not the argument the opposition presented. The opposition relied on the Policy's exclusion of disputes that federal statute makes non-arbitrable, not on a general exclusion of federal employment claims.

24.     The contractual issue is derivative of EFAA applicability. If the Court adheres to its EFAA ruling, Plaintiff requests that the Order be amended to recognize that the Policy contains the quoted federal-statutory exclusion and to state that the exclusion does not apply because the Court concluded the EFAA

11

does not preclude arbitration, rather than because the Policy contains no such exclusion.

## VIII. THE ORDER DID NOT ADJUDICATE DEFENDANTS' POST-FILING CONDUCT

25.    The opposition presented post-filing conduct as an independent ground against enforcement. Doc. 39 at 1, 10–12. It identified the April 7, 2026 separation agreement requiring a no-proceedings representation while the federal action was pending; the April 23, 2026 internal-recruitment sequence followed by silence through Plaintiff's separation date; and the May 11, 2026 revised separation agreement naming this action, requiring an acknowledgment of dismissal with prejudice, and conditioning payment on receipt of a court order dismissing the action with prejudice. Doc. 39 at 10–12; Doc. 40 ¶¶ 3–11 & Exs. A–B.

26.    The Order does not address this ground. It does not cite *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). It does not address waiver, forfeiture, or default under 9 U.S.C. § 3. It does not address Federal Rule of Evidence 408. It does not address either separation instrument, the dismissal-with-prejudice acknowledgment, or the court-order payment condition. It concludes that the agreement is enforceable.

12

27. *Morgan* eliminated any arbitration-specific prejudice requirement and directed the inquiry to whether the party asserting the arbitration right acted inconsistently with that right. The default inquiry under 9 U.S.C. § 3 turns on whether the party acted inconsistently with the arbitration right under the totality of the circumstances. *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268 (11th Cir. 2025), recognizes that default and intentional waiver are related but distinct concepts. These authorities do not decide the sequence presented here. The Court must apply the governing framework to the record.

28. The question the Order left unanswered is whether Defendants acted inconsistently with the asserted right to remove this dispute from court when, after filing the motion to compel, they tendered an agreement conditioning payment on receipt of an order from this Court dismissing the action with prejudice.

29. The separation instruments were not offered to prove liability or the value of the employment claims. They were offered as operative conduct bearing on enforcement of the arbitration right. Federal Rule of Evidence 408(b)

permits compromise conduct to be offered for a purpose other than to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(b).

30.    If the Court adheres to enforcement, Plaintiff requests that the amended Order state whether the post-filing conduct was considered, whether Rule 408 permits its consideration for the stated purpose, and whether the conduct was consistent with the asserted arbitration right.

## IX.    THE DEFECTS ARE CUMULATIVE

31.    Any one imprecision might be immaterial in isolation. Considered together, they show that the enforceability determination proceeded through a narrowed presentation of both the pleading and the opposition. The opposition was described as raising one ground. Count I was tested as a sexually explicit harassment claim. The supporting facts were separated from the ultimate allegation and classified as unequal pay and assignments. The same analysis was imported into the alternative standard. The statutory term required for the election under § 402(a) was described as Plaintiff's own conclusory label. The Policy argument was described differently from how it was presented. The independent post-filing ground was not addressed. The Order's background also states that Plaintiff's bonuses reflected "poor performance ratings," although the First Amended Complaint alleges four consecutive second-highest

14

ratings; Plaintiff addresses that statement in a separate motion under Rule 60(a) and identifies it here as one further instance of the narrowed presentation. Doc. 22 ¶¶ 26–30.

32.    Rule 54(b) permits the Court to revise the interlocutory Order before the parties complete arbitration and before the Order is reviewed after final judgment.

## X.    RELATIONSHIP TO THE § 1292(b) MOTION

33.    This motion and Plaintiff's motion under 28 U.S.C. § 1292(b) seek different relief. The certification motion assumes the Order remains in place and asks the Court to certify one question of statutory interpretation. This motion asks the Court to revise the Order because its analysis does not resolve material portions of the claim and opposition presented. Granting reconsideration may moot certification. Denying reconsideration does not resolve whether the statutory question warrants immediate appellate review.

## XI.   CONCLUSION

34.    Plaintiff requests that the Court reconsider the August 5, 2026 Order, vacate the determination that the arbitration agreement is enforceable with respect to this case, deny Defendants' motion to compel arbitration, and reopen

15

the action. In the alternative, if the Court adheres to the result, Plaintiff requests that the Court amend the Order to:

(a)    identify the Title VII claim actually pleaded and the statutory category applied under 9 U.S.C. § 401(4), and apply the governing Title VII framework before placing the pleaded conduct outside the hostile-work-environment category;

(b)    assess the factual allegations supporting Count I cumulatively and in context rather than treating the ultimate pervasiveness allegation in isolation;

(c)    conduct a separate nonfrivolousness analysis that does not rest on the Rule 12(b)(6) claim-sufficiency determination;

(d)    adjudicate the Policy's federal-statutory exclusion as it was presented in the opposition; and

(e)    adjudicate Plaintiff's preserved argument that Defendants' post-filing conduct independently defeats or precludes enforcement.

16

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that Plaintiff conferred with counsel for Defendants by email in a good-faith effort to resolve the relief requested in this motion and requested Defendants' position by August 7, 2026. As of August 7, 2026, counsel has not responded, and Plaintiff is therefore unable to state Defendants' position. Pursuant to Local Rule 3.01(g)(3), Plaintiff will continue to attempt to contact counsel and will supplement this certification promptly upon receiving a response or upon the expiration of three days, whichever is earlier.

Date: August 7, 2026

Yuliya Glazman
*Plaintiff, pro se*
2110 Thousand Trails Road
Clermont, FL 34714
Telephone: (407) 794-6503

17

18

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 7, 2026, the foregoing was delivered to

the Clerk of Court for filing. The Court's CM/ECF system will provide notice of

electronic filing to all counsel of record upon docketing.

Yuliya Glazman