**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

YULIYA GLAZMAN,

Plaintiff,

v. Case No: 8:26-cv-1522-TPB-AEP

CITIGROUP, INC. et al.,

Defendants.
___________________________________/

**AMENDED ORDER GRANTING IN PART "DEFENDANTS CITIGROUP, INC.'S AND CITIBANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND COMPEL ARBITRATION"[1]**

This matter is before the Court on "Defendants Citigroup, Inc.'s and Citibank, N.A.'s Motion to Dismiss First Amended Complaint and Compel Arbitration," filed on May 5, 2026. (Doc. 29). Plaintiff Yuliya Glazman filed a response in opposition *pro se* on May 26, 2026. (Doc. 39). After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**

This employment dispute stems from alleged disparities between the compensation received by Plaintiff, a female employee, and that of her male coworkers. Plaintiff Yuliya Glazman alleges she was employed by Defendants in Tampa from June 2007 through June 2012, and then again in early 2016 through the

---

[1] This Order has been amended only to correct clerical errors and to clarify a statement in the Background regarding Plaintiff's performance reviews. The ultimate outcome remains the same. This case must be arbitrated.

filing of the present lawsuit.[2] Throughout her employment, Plaintiff claims that she was assigned to a team of five employees whose responsibilities included program management, business execution, and investment-related functions. She alleges she was the sole female member of the team.

Plaintiff claims she received compensation that was less than similarly situated male coworkers. From 2022 through 2025, Plaintiff received a two on a scale of one to five on Defendants' performance rating scale, the second-highest rating awarded by Defendants. She alleges she was nonetheless paid below the median salary for her classification, while her male coworkers were paid at or above the median salary. In September of 2024, Plaintiff sent a written complaint to her direct supervisor requesting that her compensation be reviewed. Plaintiff alleges that her supervisor acknowledged the compensation disparity between Plaintiff and her male coworkers and reported it to Human Resources. Despite being made aware of the pay disparity, Defendants instead allegedly increased Plaintiff's work responsibilities without adjusting Plaintiff's compensation.

On March 4, 2026, Defendants notified Plaintiff that her position was being eliminated effective on May 7, 2026, due to a company reorganization. On April 2, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission

---

[2] Plaintiff has sued Defendant Citigroup, Inc., and Citibank, N.A., and alleges she "was employed by Defendants." She alleges that Citibank is a subsidiary of Citigroup. While an employee may in some circumstances have more than one employer at the same time, Plaintiff alleges no facts suggesting that is the case here. Defendants' motion asserts that "Plaintiff is employed only by Citibank, N.A. and has incorrectly filed suit against Citigroup, Inc." Defendants may be correct, but the Court need not decide that issue, because the arbitration agreement relied on by Defendants' motion applies to both Defendants, expressly providing for arbitration of employment disputes between Plaintiff and "Citi," and defining "Citi" as "Citigroup, Inc., its subsidiaries and affiliates," which includes Defendant Citibank, N.A.

("EEOC") alleging sex-based discrimination in compensation and the terms of her employment, sex-based hostile work environment, age-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act ("ADEA") of 1967, and the Florida Civil Rights Act of 1992.

On March 16, 2026, Plaintiff filed an initial complaint in this case. Her amended complaint, filed on April 23, 2026, asserts claims against Defendants for: hostile work environment based on sex under Title VII (Count I); violation of the Equal Pay Act (Count II); sex-based pay discrimination under Title VII (Count III); sex discrimination for unequal terms and conditions and discriminatory termination under Title VII (Count IV); retaliation under the Equal Pay Act/Fair Labor Standards Act (Count V); retaliation under Title VII (Count VI); age discrimination under the ADEA (Count VII); sex discrimination under the Florida Civil Rights Act ("FCRA") (Count VIII); age discrimination under the FCRA (Count IX); and whistleblower retaliation (Count X).

Defendants have moved to compel arbitration and to dismiss, or alternatively to stay, the case.

**<u>Legal Standard</u>**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*., "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). "Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the

claims before the court fall within the scope of that agreement." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations and citations omitted). The Eleventh Circuit has held that the FAA applies to cases involving employment disputes where the employer's overall employment practices affect interstate commerce.[3] *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citing *Circuit City v. Adams*, 532 U.S. 105, 119 (2001) ("[T]he FAA generally applies to contracts of employment except those involving 'transportation workers.'"))).

**Analysis**

"The existence of a valid arbitration agreement is a threshold issue for determining the propriety of a motion to compel arbitration." *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1152 (M.D. Fla. 2023). Defendants have presented evidence that Plaintiff entered into a valid arbitration agreement with them, appended to the 2025 U.S. Citi Handbook (the "Handbook"), when Plaintiff signed Defendants' 2025 U.S. Employee Handbook Acknowledgement (the "Acknowledgement"). The Acknowledgement also contained a provision requiring Plaintiff to carefully review the Handbook and stating that by signing the Acknowledgement, Plaintiff agreed to submit to employment-related disputes to arbitration and waived any right to submit employment-related disputes, claims, or controversies to a court or jury, unless expressly excluded from the agreement or prohibited by law.

---

[3] The FAA applies to arbitration agreements which "evidenc[e] a transaction involving interstate commerce." 9 U.S.C. § 2. The Supreme Court has interpreted this language broadly to mean that the FAA applies to *all* arbitration agreements that involve interstate commerce in *any way*. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).

Plaintiff does not argue, and cannot argue, that the arbitration agreement expressly excludes disputes arising under federal employment law. To the contrary, the Handbook's appended arbitration policy notes that it expressly covers, "without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964 ("Title VII") . . . the Age Discrimination in Employment Act of 1967 . . . the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963 . . . and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment."

Instead, Plaintiff opposes submitting this dispute to arbitration on the ground that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") precludes the arbitration of her claims. The EFAA provides an exception to the FAA's broad enforceability provision. *See* 9 U.S.C. § 402(b). It specifically provides that, at the election of the person alleging conduct constituting a sexual harassment dispute, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." *Id.* at § 402(a). Accordingly, under the EFAA, an employee who alleges sexual harassment may choose to pursue his or her case in court rather than by arbitration, "notwithstanding any other provision of this title." *Id.*

Plaintiff argues that the EFAA precludes the arbitration of her claims, because the case "relates to a sexual harassment dispute within the meaning of [the EFAA]." However, a majority of district courts to have addressed the issue have held that the EFAA's exclusion of sexual harassment claims from arbitration "applies only when the

plaintiff states a plausible claim of sexual harassment, which requires that the claim be capable of surviving a Rule 12(b)(6) motion." *Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-cv-2342-VMC-TGW, 2024 WL 4486565, at *6 (M.D. Fla. Aug. 23, 2024) (collecting cases), *report and recommendation adopted* 2024 WL 4263151 (M.D. Fla. Sep. 23, 2024); *see Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023).

The Court concludes that Plaintiff's complaint does not plausibly state a claim for sexual harassment that would survive a motion to dismiss under Rule 12(b)(6). Courts recognize two kinds of sexual harassment claims under Title VII and the FCRA. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 62 (1986). One such claim is *quid pro quo* sexual harassment, in which a supervisor uses the threat or promise of employment-related actions to extract sexual favors from the employee. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006). Plaintiff does not attempt to allege this type of harassment.

A second type of sexual harassment claim is based on the creation of a hostile work environment. A hostile work environment is not created by such matters as discrimination in compensation or assignments. It requires a work environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836-37 (11th Cir. 2021) (internal quotations omitted); *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1323 (S.D. Fla. 2025) (explaining that the Eleventh Circuit has noted that "all of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting,

unaddressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment"); *Waiguchu v. Morgan Stanley & Co., LLC*, No. 1:25-cv-7443-GHW, 2026 WL 892069, at *11 (S.D.N.Y. Apr. 1, 2026) (holding that "the drafters of the EFAA did not extend its protection to all categories of gender-based discrimination" and that "allegations of differential treatment and microaggressions . . . are not conduct constituting 'sexual harassment' under the EFAA").

Plaintiff's complaint includes a count titled "Hostile Work Environment Based on Sex" and a conclusory allegation that the conduct alleged in the complaint was "sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and to create a working environment that unreasonably interfered with [her] ability to perform her core responsibilities." While these conclusory allegations borrow some of the language courts have used to describe a hostile work environment, nowhere in the "Hostile Work Environment" count or anywhere else in the complaint are there any allegations plausibly suggesting a sexual harassment claim under the standards set forth above. Plaintiff alleges facts showing at most discriminatory unequal pay and assignments, pointing to "three documented occasions" within a nine-month period that occurred, including displacement of her work, deadline pressure, and unequal assignment structure between her and her male coworkers. These allegations do not state a plausible hostile work environment claim, and therefore the EFAA does not preclude enforcement of the arbitration agreement.[4]

[4] Other courts have declined to apply a plausibility standard in determining whether the EFAA precludes arbitration of a plaintiff's claims. Instead, they have concluded that "a plaintiff need only plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication, be it a motion to dismiss, motion for judgment on the pleadings, motion

## Conclusion

For the reasons discussed above, the arbitration agreement in this case is enforceable. In accordance with Eleventh Circuit precedent, this case is stayed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)). Because the Court has concluded that arbitration is required, Defendants' motion is denied to the extent they move to dismiss the case.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendants Citigroup, Inc.'s and Citibank, N.A.'s Motion to Dismiss First Amended Complaint and Compel Arbitration" (Doc. 29) is hereby **GRANTED IN PART** and **DENIED IN PART**.

(2) The motion is **GRANTED** to the extent the Court finds that Defendants may enforce the arbitration agreement in this case.

(3) The motion is **DENIED** as to the request to dismiss the case.

(4) This case is **STAYED** pending the completion of arbitration, and the parties are directed to notify the Court within 14 days of the resolution of the arbitration proceedings.

---

for summary judgment, or trial." *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024). Even if the Court were to apply this less stringent, "nonfrivolous" standard, for the same reasons discussed herein, Plaintiff's conclusory allegations labeling her claims as "harassment" would be insufficient to defeat arbitration pursuant to the EFAA.

(5) The Clerk is directed to stay and administratively close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 26th day of August, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE